UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------
IN RE:                                         )          Case No. 09-23645 (ASD)
                                               )
STEEL FAB, INC.,                               )          Chapter 7
                                               )
    DEBTOR.                                    )
------------------------------------------------------ )
                                               )          Adv. Pro. No. 11-02200
                                               )
ANTHONY NOVAK,                                 )
CHAPTER 7 TRUSTEE,                             )          RE: Adv. ECF No. 24
                                               )
    PLAINTIFF.                                 )
v.                                             )
                                               )
CMC JOIST AND DECK,                            )
                                               )
    DEFENDANT.                                 )
------------------------------------------------------

APPEARANCES:

Derek V. Oatis, Esq.                                                Attorney for
                                                                    Plaintiff/Trustee
Lobo & Novak, LLP
280 Adams Street
Manchester, Connecticut 06042

Suzanne LaPlante, Esq.                                              Attorneys for Defendants
Berman and Sable, LLC
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103

Neil J. Orleans, Esq.
Goins, Underkofler, Crawford & Langdon, LLP
1201Elm Street, Suite 4800
Dallas, Texas 75270


**MEMORANDUM AND ORDER ON DEFENDANT'S
UNCONTESTED MOTION FOR SUMMARY JUDGMENT**



ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I. INTRODUCTION

Before the Court is an adversary proceeding in which the Plaintiff, Anthony Novak, the duly appointed Chapter 7 Trustee, (hereinafter, the "Trustee"), seeks to avoid and recover as preferential, pursuant to 11 U.S.C. § 547(b), a transfer of funds from the debtor, Steel Fab, Inc. (hereinafter, "Steel Fab" or the "Debtor") to CMC Joist and Deck (hereinafter, "CMC" or the "Defendant"). On February 17, 2012, the Defendant filed a *Defendant's Motion for Summary Judgment* (hereinafter, the "Motion"), Adv. ECF No. 24. The Plaintiff has failed to file a response to the Motion within the 21 day period provided by the Local Rules or at any time thereafter. *See* D. Conn L. Civ. R. 7(a)1 and 56(a)(4). As it appears that all relevant factual issues in this proceeding are either undisputed or cannot be disputed, the present posture of the Motion leaves a single narrow issue of law in dispute – whether two checks issued by Enfield Builders (hereinafter, "Enfield"), the general contractor on a construction project in which Steel Fab was a subcontractor, and made payable to the order of both Steel Fab and CMC, constitute transfers "of an interest of the debtor in property" within the purview of §547(b). As more fully explained hereinafter, the Court finds they are not. Accordingly, the  Motion shall be granted**.**

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding by virtue of 28 U.S.C. § 1334(b); and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and by the consent of the parties. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(F).

## III.  FACTUAL AND PROCEDURAL BACKGROUND

The following factual background is primarily derived from the summary judgment

pleadings of the Defendant, including, *inter alia*, the *Answer of CMC Joist and Deck to Complaint for Turnover Pursuant to 11 U.S.C. §547, Adv. ECF No. 22,* and what was characterized as a "First Defense"*;* the *Defendant's Motion for Summary Judgment,* Adv. ECF No. 24, and its accompanying *Brief in Support of Summary Judgment,* Adv. ECF No. 24-1*;* the *Defendants' Local Rule 56(a)1 Statement*, Adv. ECF No. 24-2;  the *Affidavit of David E. Calkins in Support of Defendant's Motion for Summary Judgment,* Adv. ECF No. 24-3, and attached Exhibits "A", "B" and "C." The Court has also considered the Plaintiff's *Complaint For Turnover Pursuant to 11 U.S.C. §547*, Adv. ECF No. 1, as well as its independent examination of the official record of the instant bankruptcy case and adversary proceeding.

On May 26, 2008, Enfield was a contractor engaged on a construction project at the Groton Senior Center, Groton, Connecticut.  Steel Fab was engaged on the same project as a subcontractor and CMC as a supplier. On that same date, Enfield (the "Contractor"), Steel Fab, (the "Subcontractor"),  and CMC (the "Supplier"), entered into a "Joint Check Agreement" (hereinafter, the "Agreement"). The effect of the Agreement was two fold: to require Enfield to make payment(s) for "Materials" (as defined in the Agreement), provided by CMC to Steel Fab by way of check(s) made payable to both Steel Fab and to CMC and to make Enfield directly liable for the payment(s) if Steel Fab failed to timely endorse Enfield's check(s) over to CMC.  The purpose of this Agreement is explained therein as follows:

> Contractor, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, and to persuade Supplier to extend or continue to extend credit to Subcontractor for the purchase of building materials and other goods and services ("Materials") which have been

3

>furnished or which will be provided in the future for incorporation into the Project, unconditionally guarantees payment of all materials ordered from Supplier by (a) Contractor, (b) Subcontractor and/or (c) Contractor on behalf of Subcontractor, and agrees to pay for such Materials by check made jointly payable to the order of Subcontractor and Supplier and to deliver the jointly payable checks to Supplier after having the checks endorsed by Subcontractor. In the event the Subcontractor refuses or is unable to endorse any jointly payable checks or delays endorsing such checks for more than ten (10) days after issue, Contractor will immediately issue and deliver to Supplier a check payable solely to Supplier for the value of the Materials ordered for the Project. Any direct payment from the Contractor to the Supplier will be credited to the Supplier's account for the Subcontractor.

Adv. ECF. No. 24-3, Exhibit "A".

On October 2, 2009, Enfield delivered to Steel Fab a check for $21,855.93 (Check No. 067844), made jointly payable to Steel Fab and CMC. It was thereafter endorsed by Steel Fab and paid over to CMC which, on October 13, 2009, deposited it into its checking account. On December 8, 2009, Enfield delivered to Steel Fab another check for $18,470.83 (Check No. 992280), made jointly payable to Steel Fab and CMC. This check was also endorsed by Steel Fab and paid over to CMC, and, on December 28, 2009 was deposited into its checking account. These checks shall hereinafter also be characterized as the "Transfers."

On December 15, 2009, the Debtor's Chapter 7 bankruptcy case (Case No. 09-23645) was commenced by the filing of an involuntary petition, ECF No. 1, to which, on March 1, 2010, an *Answer* was filed, ECF No. 40. On March 17, 2010, the Debtor filed a *Proposed Involuntary Debtor's Notice of Withdrawal of Its Answer Contesting Involuntary Petition And of Its Consent For the Entry of an Order for Relief,* ECF No. 59. On March 8, 2010, an Order for Relief was entered and on March 9, 2010, John O'Neil was appointed as the Chapter 7 trustee. Thereafter, on March 25, 2010, Mr. O'Neil resigned as trustee

and Anthony Novak was appointed as successor Trustee.

On November 28, 2010, the Trustee, through his attorney, mailed a letter to CMC, demanding that the Transfers received by CMC in connection with the two checks issued by Enfield be turned over to the Trustee for the benefit of the Debtor's estate. CMC responded by indicating that the Transfers were made under a joint check agreement; that Steel Fab had no interest in the funds and was a mere "conduit" for payment. On December 14, 2010, the Trustee, on behalf of the bankruptcy estate, commenced the instant adversary proceeding seeking to avoid, as preferential under §547(b), Enfield's two Transfers to CMC totaling $40,326.76, alleging, *inter alia*, that the payments were made to or for the benefit of CMC; that they were on account of an antecedent debt owed by the Debtor to CMC; that they were made while the Debtor was insolvent; were made within 90 days prior to the bankruptcy petition date and as a consequence, enabled CMC to receive more than it would have received otherwise under Chapter 7.

## IV.  DISCUSSION

### A.    Summary Judgment Standards

Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Upon consideration of a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Jasco Tools, Inc. v. Dana Corp.* (*In re Dana Corp.*), 574 F.3d 129, 151 (2d Cir. 2009).

The moving party has the burden of showing that there are no material facts in dispute, and all reasonable inferences are to be drawn, and all ambiguities resolved, in favor of the non-moving party. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598 (1970); *see also United Transp. Union v. National R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009). The Court, in ruling upon a summary judgment motion, "cannot try issues of fact, but can only determine whether there are issues of fact to be tried." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (quoting *Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962)).

In deciding an unopposed summary judgment motion, the "court must still assess whether the moving party ha[s] fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *See Vermont Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006), *quoting*, *Vermont Teddy Bear* at 244.

**B.    Section 547(b) Prohibition Against Preferential Transfers**

"The trustee of a bankrupt estate has broad powers under the Bankruptcy Code to avoid certain transfers of property or assets made by the debtor either after or shortly before the filing of the bankruptcy petition." *Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 55 (2d Cir. 1997). Bankruptcy Code §547 sets forth the elements that the trustee must establish in order to avoid as a "preference" the prepetition transfer of property of the

6

debtor.  It provides in relevant part as follows:

* * * *

>    (b) Except as provided in subsections (c) and (i) of this section, the trustee
>    may avoid *any transfer of an interest of the debtor in property–*
>
>    (1) to or for the benefit of a creditor;
>    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>    (3) made while the debtor was insolvent;
>    (4) made–
>       (A) on or within 90 days before the date of the filing of the petition; . . . and
>    (5) that enables such creditor to receive more than such creditor would receive if--
>       (A) the case were a case under chapter 7 of this title;
>       (B) the transfer had not been made;  and
>       (C) such creditor received payment of such debt to the extent provided by the provisions of this title. . . .

* * * *

11 U.S.C. § 547 (2005) (emphasis added).

According to the legislative history of section 547(b),

> The purpose of the preference section is two-fold. First, by permitting the
> trustee to avoid pre-bankruptcy transfers that occur within a short
> period before bankruptcy, creditors are discouraged from racing to the
> courthouse to dismember the debtor during [its] slide into bankruptcy. The
> protection thus afforded the debtor often enables [it] to work [its] way out of
> a difficult  financial situation through cooperation with all of [its] creditors.
> Second, and more important, the preference provisions facilitate the prime
> bankruptcy policy of equality of distribution among creditors of the debtor.
> Any creditor that received a greater payment than others of [its] class is
> required to disgorge so that all may share equally.

*Lawson v. Ford Motor Co. (In re Roblin Industries, Inc.)*, 78 F.3d 30, 40 (2d Cir. 1996) (citing *H. Rep. No. 595, 95th Cong., 1st Sess*. 177-178 (1977)).

The Plaintiff bears the ultimate burden of proof by a preponderance of the evidence on all of the elements of a preferential transfer under §547(b). *Id;* 11 U.S.C. § 547(g)

7

(2005).[1]  In sum, a transfer may be avoided as preferential by establishing all of the following:

>  (1) the transfer is of an interest of the debtor in property;
>  (2) to or for the benefit of a creditor;
>  (3) on account of an antecedent debt;
>  (4) made while the debtor was insolvent;
>  (5) within 90 days of bankruptcy or within a year of bankruptcy if the creditor was an insider;
>  (6) and the transfer enabled the creditor to receive more than it would have received in a chapter 7 liquidation had the transfer not taken place.

*Cadle Co. v Mangan (In re Flanagan)*, 503 F.3d 171, 180 (2d Cir. 2007).

In its Answer, CMC has refuted elements (2) through (6) above, asserted by the Plaintiff in his Complaint, only with simple denials or by asserting a lack of sufficient knowledge. Nor has it offered any factual support suggesting that elements (2) through (6) are not in genuine dispute in its Local Rule 56(a)1 Statement. Nevertheless, CMC impliedly asserts that any factual disputes that exist as to elements (2) through (6) are not material[2] for purposes of its summary judgment motion because the Plaintiff cannot prevail if he cannot establish *all* of the six elements and as a matter of law, he cannot show that the payments at issue meet the requirement for element (1), that is, "an interest of the debtor in property" pursuant to Bankruptcy Code §547(b).  *Napolitano v. Vibra-Conn (In re R.J. Patton Co., Inc.)*, 348 B.R. 618, 624 (Bankr. D. Conn. 2006), ("burden is on the Trustee to prove by a preponderance of the evidence every element of Section 547(b) (including that

---

[1] "For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section. . . ."

[2] A fact is considered material if it might affect the outcome of the suit under governing law. *See SCR Joint Venture L.P. v. Warshawsky* 559 F.3d 133, 137 (2d Cir. 2009).

the property transferred was property in which the debtor had 'an interest' within the statutory purview"). The Defendant takes the position in its "First Defense" that Steel Fab had no control over the Transfers and the funds they represented and therefore no interest in them.

**C.   Whether There Was a Transfer to CMC of Property In Which Steel Fab Had an Interest.**

The requirement that the transfer *be of an interest of the debtor in property* is not defined in the Bankruptcy Code and has therefore been left to the courts to interpret." *In re Flanagan*, 503 F.3d at 180. (emphasis added). However, in light of the underlying purpose of §547 to "preserve the property includable within the bankruptcy estate – the property available for distribution to creditors," courts have construed the term to mean "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S. Ct. 2258 (1990). "Thus, the trustee may only seek to reach those legal or equitable interests that the debtor would have held at the time of the petition but for the debtor's transfer of those interests.*"  Glinka v. Bank of Vermont (In re Kelton Motors, Inc.)*, 97 F.3d 22, 25 (2d Cir. 1996).  Further, "[w]hether the debtor has a legal or equitable interest in property such that it becomes 'property of the estate' under section 541 is determined by applicable state law." *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006) (citing *Butner v. United States*, 440 U.S. at 54).

Clearly, there was a transfer of an interest of Steel Fab in property at the time prior to the bankruptcy, and outside the preference period, when the parties entered into the Agreement. Steel Fab gave up dominion and control over the receivables and the right to

9

decide when and how to pay the Supplier; See In re R.J. Patton Co., 348 B.R. at 624-625 (the signing of the joint payment agreement was the transfer of property). But whether Steel Fab still had an interest in the Transfers at the time it turned them over CMC within the preference period is critical to determining whether it was a transfer for the purposes of §547(b).

Connecticut law recognizes the validity of joint payment agreements as a matter of contract. *Conn. Elec. Equip. Co. Inc. v. U.S. Fidelity and Guaranty Co.*, CV 000274894S, 2002 Conn. Super. LEXIS 926, *11-12 (March 21, 2002). ("There is no issue as to whether, in general, joint payment agreements are valid and enforceable in Connecticut."). Further, as in this case where the agreement was between the general contractor, subcontractor and supplier, a court held *inter alia*, that valid consideration for the supplier's joining in the agreement was its willingness to supply the materials and that the supplier was the intended beneficiary of the joint payment agreement. *Bradco Supply Corp. v. MPC Educational Sys. Inc.*, CV-000441201, 2001 Conn. Super. LEXIS 2859, *5-6 (September 1, 2001).

Under the Uniform Commercial Code adopted by Conn. Gen. Stat. §42a-1-101 *et seq.*, subject to exceptions not relevant here, only a "holder" or someone who has the rights of a holder may properly present an instrument for payment. Conn. Gen. Stat. §42a-3-301; *Ninth RMA Partners, L.P. v. Krass*, 57 Conn. App. 1, 7, 746 A.2d 826 (2000). A "holder" means "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession;" Conn. Gen. Stat. §42a-1-201(21)(A); *Id*. In *In re Kelton Motors* 97 F.3d at 26, the Court of Appeals in a similar context, examined the meaning of the word "possession" and concluded that

10

"possession" requires an "intent to control."[3] A check payable to more than one person may be payable jointly, requiring valid signatures of all payees, or it may be payable in the alternative. If it is payable to more than one person, "it is payable to all of them and may be negotiated, discharged, or enforced *only* by all of them." Conn. Gen. Stat. §42a-3-110(d) (emphasis added); *See Perley v. Glastonbury Bank & Trust Co.*, 170 Conn. 691, 368 A.2d 149 (1976) (negotiable instrument that was payable to two payees was not properly negotiable if one of the endorsement signatures was unauthorized) at 695-96; *Coregis Ins. Co. v. Fleet Nat'l Bank*, 68 Conn. App. 716, 724, 793 A.2d 254 (2002) ("*Perley* determined the principle that governs if the instrument is *jointly* payable").

Thus, it is clear that under Connecticut law, Steel Fab was not a "holder" because it did not have "possession" of the checks within the meaning of Conn. Gen. Stat. §§42a-1-201(21)(A) and 42a-3-301 and as a consequence, had no property interest in the checks when they were delivered to Steel Fab by Enfield. Under the Agreement, enforceable as a matter of contract law, Steel Fab relinquished its right to control the checks intended to be for the benefit of CMC. Therefore, since Steel Fab had no interest in the checks at the time they were delivered to it, there was no "transfer of an interest of the debtor in property" for purposes of §547(b).

In sum, there were no preferential transfers in this case because prior to the preference period, Enfield, Steel Fab and CMC agreed that Steel Fab would have no rights to the funds the checks represented. The Debtor's estate was in no way diminished

---

[3]The court compared the word "possession" in the civil context to the criminal context and found the comparison apt. "In Vermont, as elsewhere, unhindered possession of an item, particularly when accompanied by use of the item as one's own, is strong evidence of ownership." (citation omitted). *Damon v. Secretary of Health, Education & Welfare*, 557 F.2d 31, 34 (2d Cir. 1977).

because it would not otherwise have benefitted had the payments not been made and therefore, suffered no loss when the checks were paid over to CMC. See *Herzog v. SunarHauserman (In re Network 90 Degree, Inc.)*, 126 B.R. 990, 996 (N.D. Ill. 1991). ("it is the debtor's control over the money at the time it is transferred which is crucial, not the control which the debtor may have enjoyed at a previous date when the terms of that transfer were arranged. See [*Coral Petroleum, Inc. v. Banque Paribas-London*,] 797 F.2d at 1358 ('the key to the resolution of this dispute centers on whether (the debtor) had any control of the . . . collateral during the repayment of [the debtor's] loan when the preference allegedly occurred'); *id*. at 1359-60."

Since the Court has found that the transfers were not preferential because Debtor had no interest in the checks at the time the transfers occurred, it is unnecessary for the Court to consider any other argument offered by the Defendant in support of its position.

### V. CONCLUSION AND ORDER

For all of the foregoing reasons, the Court concludes that there is no genuine dispute as to the material facts and that CMC is entitled to judgment as a matter of law, in accordance with which

**IT IS HEREBY ORDERED** that CMC Joist and Deck's Motion for Summary Judgment, Adv. ECF No. 24, is **GRANTED**.

A separate Judgment consistent with this Memorandum of Decision shall issue this same date.

Dated: February 21, 2013                                              BY THE COURT

Albert S. Dabrowski
United States Bankruptcy Judge